FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 3 - 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GARY LIANG,

                          Plaintiff,

    -against-

THE CITY OF NEW YORK, *et al.*,

                         Defendants.
-----------------------------------------------------------x

MEMORANDUM & ORDER

10-CV-3089 (ENV) (VVP)

VITALIANO, D.J.,

On July 7, 2010, plaintiff Gary Liang brought this lawsuit against Xin Xu, Bei Wang, Da Peng Song, Ivan Quek (aka Ivan Sun) and Yi Jing Tan (aka Kerry Tan) ("non-City defendants"), as well as various individuals who were employees or officials of the City of New York ("City defendants"). By Memorandum and Order, dated September 18, 2013, the Court dismissed all of plaintiff's claims against the City defendants, except for his § 1983 claim for unreasonable search and seizure. *See Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394 (E.D.N.Y. Sept. 24, 2013) ("*Liang I*"). Familiarity with that Order is assumed. Against the non-City defendants, Liang alleges violations of § 1983, § 1985, and RICO[1] and brings various state law claims as well. Having neglected to move simultaneously with City defendants, on April

---

[1] Plaintiff does not address in his briefing any RICO claim purportedly brought against the non-City defendants and, therefore, the Court considers the motion as directed against this claim to be unopposed and the claim to have been abandoned. *At&T Corp. v. Syniverse Techs.*, 2014 U.S. Dist. LEXIS 125256, at *24 (S.D.N.Y. 2014).

1

15, 2014, the non-City defendants moved to dismiss all claims against them pursuant to Rule 12(c)(1).[2]

## Background

As set forth in more detail in the Court's September 2013 Order, Liang's essential contention is that the non-City defendants lodged false complaints with the police and then bribed—and generally conspired with—the City defendants, to obtain his false arrest on three separate occasions. For that detail, and without repetition here, reference is made to *Liang I*. Notably and ultimately with dispositive impact here, the Court found that the essentially identical allegations of wrongdoing now advanced did not plausibly assert claims against the City defendants. Indeed, the Court concluded, and Liang cannot be heard to relitigate, that he "has pleaded no facts suggesting a 'meeting of the minds' among the City defendants, or any subset of them, or by any one of them with any other person, to violate his civil rights." The Court emphasized that "[w]hat is missing from the pleadings are any facts plausibly showing that any of the City defendants' conduct was prompted by a meeting of the minds to commit a constitutional violation." *Liang I*, at *15.

## Standard of Review

Elementally, "[t]he standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Allen v. Norman*, 08-CIV-6041, 2012 WL 3525584, at *7 (S.D.N.Y. July 23,

---

[2] Although Song moved to dismiss under Rule 12(b), for reasons discussed below, the Court construes that motion as being made under Rule 12(c)(1).

2

2012) (internal quotations omitted) *aff'd*, 548 F. App'x 25 (2d Cir. 2013). Further, a 12(b) motion to dismiss that is filed after the close of pleadings "should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126-27 (2d Cir. 2001).

The pleading requirements are, of course, unaffected. Rule 8(a)(2) still requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." *Id.* (*quoting Twombly*, 550 U.S. at 555); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).

To survive a Rule 12(b) or 12(c) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted); *see Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007) (interpreting *Twombly* to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted),

*rev'd on other grounds*, 129 S. Ct. 1937 (2009). On such motions, a court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). The motion court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

## Discussion

### I. Timeliness

As noted earlier, a 12(b) motion to dismiss that is filed after the close of pleadings "should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126–27 (2d Cir. 2001). In line with this understanding, although Song purports to move to dismiss pursuant to Rule 12(b)(6), the Court construes that motion as made under Rule 12(c).

In this vein, Liang contends that the Court should not consider the non-City defendants' motions at all because of their failure to move simultaneously with the City defendants. There is no such requirement. Plus, Rule 12(c) envisions differential scheduling in providing that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "[A]lthough the rule

4

does not set a specific time limit for the motion . . . [o]rdinarily, a motion for judgment on the pleadings should be made promptly after the close of the pleadings." *In re CCT Commc'ns, Inc.*, No. 07-10210, 2011 WL 5509197, at *2 (Bankr. S.D.N.Y. Nov. 10, 2011) (internal quotations omitted). In fact, "[i]f a party engages in excessive delay before moving under Rule 12(c), the district court may refuse to hear the motion on the ground that its consideration will delay or interfere with the commencement of the trial." *Id.* This determination is within the sound discretion of the Court, and, instructively, a motion for judgment on the pleadings may be considered timely even if made only days before trial. *See Artist Mgmt. Office, Inc. v. Worldvision Enters., Inc.*, 1997 WL 188937, at *1–3 (S.D.N.Y. Apr. 18, 1997).

Here, discovery is complete and plaintiff and the City defendants are currently briefing the City defendants' motion for summary judgment on Liang's sole remaining claim against them. Dispositively, in any case, the Court concludes that its consideration of the instant motions will not cause any delay in this litigation and that the motion is, therefore, proper, ripe and timely. *See Bey v. City of New York*, 2010 WL 3910231, at *3 (S.D.N.Y. Sept. 21, 2010) (finding 12(c) motion timely because a trial date was not yet set and "reaching the merits of Defendants' 12(c) motion serves the interest of judicial economy").

II. <u>Section 1983 Claim</u>

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519

(2d Cir. 1993). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." *Id.* (internal citations omitted). Further, to state a claim under § 1983, a plaintiff must allege that the challenged conduct was attributable at least in part to a person who was acting under color of state law. *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). As a consequence of those requirements, "[t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citations omitted).

Liang claims that the non-City defendants conspired with the City defendants—the latter being state actors—to deprive him of his civil rights. (*See, e.g.* Am. Compl. ¶¶ 8-26, 201-02). Specifically, Liang alleges that Tan filed a false complaint against him and that, as part of the alleged conspiracy, Wang and Song made false statements to obtain orders of protection running against him. (Am. Compl. ¶¶ 86, 205). Plaintiff's misapprehension of the law is readily apparent. To start, the mere filing of "a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation." *Vazquez v. Combs*, No. 04-CV-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004). *See also Castro v. County of Nassau*, 739 F. Supp. 2d 153, 173 (E.D.N.Y. 2010) ("[T]he

provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.") Additionally, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. Indeed, "[i]n order to allege a conspiracy between [ ] private individuals and government actors, Plaintiffs must show the existence of a meeting of the minds, and the intention knowingly to deprive an individual of his constitutional rights." *Davis v. Garcia*, 2008 WL 2229811, at *9 (S.D.N.Y. May 27, 2008) (citation omitted).

These failures are the death knell for Liang's § 1983 claims against the non-City defendants. Again, the Court has already held that Liang "has pleaded no facts suggesting a 'meeting of the minds' among the City defendants, or any subset of them, or by any one of them with any other person [a universe that, obviously, includes all of the non-City defendants], to violate his civil rights." *Liang I*, at *15. Nothing in the pleadings against any of the non-City defendants disturbs that analysis and its conclusion as to the absence of a plausibly pleaded conspiracy. Accordingly, Liang's § 1983 conspiracy, or collective responsibility claims against the non-City defendants hinged to state actors fail as a matter of law.[3]

---

[3] Although Liang does not address this possibility in his briefing, the Court notes that his sole remaining claim against the City defendants for unreasonable search and seizure cannot save his § 1983 claim against the non-City defendants because, among other things, Liang has not alleged any connection between action taken by the non-City defendants and the allegedly unconstitutional search and seizure. See Am.

III. **§ 1985 Claim**

A plaintiff alleging violation of § 1985 must plead facts that show: 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). A § 1985 conspiracy is "an agreement between two or more individuals where one acts in further[ance] of the object[ive] of the conspiracy and each member has knowledge of the nature and scope of the agreement." *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010). To sustain a § 1985 claim, a "plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotations omitted). Moreover, for a § 1985 claim to survive doorstep dismissal, the pleadings must plausibly allege that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas*, 165 F.3d at 146 (quotations omitted).

Not surprisingly, given the findings the Court has already made in this case, Liang's § 1985 claim must fail. Indeed, it fails for the very same reason that his § 1983

---

Compl. ¶¶ 142-44. Nor, in the light of the Court's finding that there is no plausible pleading of it, can the alleged violation be constructively connected to the non-City defendants through the overarching conspiracy Liang charges existed between the two groups of defendants.

8

claim fails—namely, because he has pleaded no facts suggesting a "meeting of the minds" among any of the defendants to violate his civil rights. *See, e.g., Liang I,* at *15. Although plaintiff asserts that "[d]efendants acted together to deprive Plaintiff of equal protection and of fourth amendment protection from unlawful search and seizure," and that they "conspired . . . to victimize the plaintiff and take his business away from him," (Am. Compl. ¶¶ 22–26, 206), such naked allegations are "textbook examples of the kinds of conclusory allegations that are devoid of factual content." *Liang*, 2013 WL 5366394 at *15. Even more significantly, there is not a peep in Liang's complaint suggesting, much less plausibly alleging, that the claimed conspiracy was motivated by racial or class-based animus, which is also fatal to a § 1985 claim. *See Germosin v. Teneyck*, 2014 U.S. Dist. LEXIS 105044, at *28-29 (S.D.N.Y. 2014). For these reasons, Liang's § 1985 claim must be dismissed on the pleadings. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (quotations omitted).

IV. <u>State Law Claims</u>

Plaintiff purports to advance state law claims against the non-City defendants for "unlawful detention and confinement" (Count IV) and filing of false police complaints (Count VI).[4] See Am. Compl.; Pl. Mem. at 16-17. Under New York law, there is no

---

[4] In his brief, Liang speaks as if he has brought a state law claim of tortious interference with contract against the non-City defendants. See Pl. Mem. at 16. However, the amended complaint contains no tortious interference allegations

9

separate private right of action for the filing of a false police complaint, though the provision of false information to the police may, under certain circumstances, be evidence supporting a false arrest claim. See, e.g., Rivers v Shanahan, 2011 N.Y. Misc. LEXIS 2651, at *7-10 (Sup. Ct. NY Cnty. 2011). Accordingly, at most, Liang's complaint may be read as his assertion of a state law claim against the non-City defendants for false arrest.

As for the state law false arrest claim, the elements of such a claim under New York law are substantially the same as under § 1983. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Hence, a plaintiff alleging false arrest under New York law must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Hill v. Marino, 2014 U.S. Dist. LEXIS 119161, at *11 (E.D.N.Y. 2014). Further, for a private individual to be liable for false arrest under New York law, he "must do more than simply provide information to the police. Rather, [he] must affirmatively induce the police to act, such as by actively participating in the arrest and causing it to be made, or showing active, officious, and

---

against any of the non-City defendants. See Am. Compl. ¶¶ 183-92. Furthermore, the Court has already concluded that, with respect to his tortious interference claim as it seemed to relate to the City defendants, Liang "does not specify what contract he is referring to, nor does he plead facts indicating breach." *Liang I*, at *18. Having failed to identify in his pleadings, or even in his various motion papers, any contract right he had that was the target of tortious interference by any party or that any contract he had was breached by the conduct of another party, to the extent that Liang is attempting to advance a tortious interference claim against the non-City defendants, that claim is dismissed with prejudice.

undue zeal to the point whereby the officer is induced to act involuntarily." Rivers at *7-8. In other words, "[i]n order to hold a civilian defendant liable for false arrest, the plaintiff must establish that that defendant did not merely report a crime to the police or participate in the prosecution, but actively importuned the police to make an arrest without reasonable cause to believe in the plaintiff's culpability." Rivera v County of Nassau, 83 A.D.3d 1032, 1033 (2d Dep't 2011).

Liang fails to satisfy the pleading requirements for a New York state law false arrest claim against someone whose complaint to the police leads to an arrest. Although Liang has alleged that the non-City defendants lodged false complaints with the police that contributed to his arrest on three occasions, he provides no facts supporting those wholly conclusory allegations, nor does he adequately plead that conduct by any of the non-City defendants rendered any arrest or charging decision made by the City defendants to be "not of [their] own volition." See Oszustowicz v. Admiral Ins. Brokerage Corp., 49 A.D.3d 515, 516 (2d Dep't 2008). Indeed, the only allegations that Liang advances that might support the claim of "importuning" are the same conclusory allegations that serve as the basis for his § 1983 conspiracy claim—namely, that the non-City defendants "bribed" and generally conspired with City Defendants to have him falsely arrested. However, as discussed above, Liang has "pleaded no facts suggesting a 'meeting of the minds' among the City defendants, or any subset of them, or by any one of them with any other person, to violate his civil rights." *Liang I*, at *15. In short, no pleaded facts support an allegation of wrongful importuning of the arresting officers by any complainant as New York law requires.

Accordingly, Liang's state law claim for false arrest against the non-City defendants fails as a matter of law. It is dismissed with prejudice.

## Conclusion

For the foregoing reasons, plaintiff's § 1983, § 1985, RICO and state law claims against all non-City defendants are dismissed with prejudice.

The case, with its sole extant claim, remains respectfully referred to Magistrate Judge Pohorelsky for his continued pre-trial management.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2014

s/Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge